IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARDIONET, LLC, et al. | : | CIVIL ACTION |
| | : | |
|    v. | : | No. 12-2517 |
| | : | |
| MEDNET HEALTHCARE | : | |
| TECHNOLOGIES, INC., et al. | : | |

## <u>MEMORANDUM</u>

**Juan R. Sánchez, J.**                                                                 **July 22, 2015**

MedTel24, Inc. (MedTel), one of seven Defendants in this patent infringement action,
which was resolved by entry of a Consent Judgment in January 2014, seeks relief from that
Judgment pursuant to Federal Rule of Civil Procedure 60(b).  MedTel argues the Consent
Judgment should be set aside because (1) MedTel was not represented by counsel when the
Judgment was entered, rendering the Judgment void ab initio, (2) MedTel accepted the Judgment
under duress, and (3) joint defense counsel delayed disclosing a conflict of interest stemming
from another Defendant's decision to settle the case, preventing MedTel from presenting an
effective defense for trial.  Plaintiffs CardioNet, LLC, and Braemar Manufacturing, LLC
(collectively, CardioNet), oppose the motion.  Because MedTel has not satisfied its heavy burden
to show relief is warranted pursuant to Rule 60(b), its motion for relief from the Consent
Judgment will be denied.

**FACTS**

In May 2012, CardioNet filed this copyright infringement action against Mednet
Healthcare Technologies, Inc. (Mednet), and three customers of Mednet—MedTel,
RhythmWatch LLC, and AMI Cardiac Monitoring, Inc.—alleging Defendants were infringing
three patents owned by CardioNet by making, using, selling, and/or offering for sale the Heartrak
ECAT System, a cardiac monitoring system used to monitor, analyze, and report patient cardiac

activity during a monitoring period prescribed by the patient's physician.   Through a series of amendments, the Complaint was expanded to include allegations of infringement as to two additional patents owned by CardioNet and to join an additional Plaintiff (Braemar Manufacturing, LLC)[1] and three additional Defendants, including Universal Medical, Inc. (UMI), a company affiliated with Mednet that manufactures and sells the Heartrak ECAT System or a component thereof.[2]

The Heartrak ECAT System consists primarily of two devices—a Monitor and a Communicator—and software, known as Cardio Station, which is configured to operate at a monitoring center in conjunction with the devices.   MedTel is in the business of remote cardiac monitoring.   Pursuant to a Purchase, Resale and License Agreement (License Agreement) between MedTel and UMI, UMI supplied MedTel with Heartrak ECAT Monitors and Communicators which MedTel sold to doctors for use with their patients.   MedTel processes signals received from these devices using CardioStation software.

The License Agreement includes an indemnification provision in which UMI agreed to

indemnify and hold harmless [MedTel] and its affiliates, and their respective officers, directors, agents, and employees from and against any and all claims, demands, causes of action, obligations, liabilities, expenses (including reasonable attorney's fees), damages, or suits whatsoever, in connection with, arising out of, or relating to, in whole or in part:   a) any UMI breach of any warranty, representation or agreement of UMI in this Agreement; b) any act or omission of UMI, its agents, or employees; or c) *any infringement claims regarding the design, specifications, patent, trademark, copyright or other proprietary or intellectual property rights of others by UMI-provided intellectual property, including intellectual property used in the manufacture of Devices or development of Software.*

---

[1]  CardioNet, LLC, and Braemar Manufacturing, LLC, are both wholly owned subsidiaries of BioTelemetry, Inc., a publicly held company.  *See* Rule 7.1 Disclosure Statements of CardioNet, LLC, and Braemar Manufacturing, LLC, ECF Nos. 115 & 116.

[2]  The two other joined Defendants—Heartcare Corporation of America (Heartcare) and Universal Medical Laboratory, Inc. (UML)—were also companies affiliated with Mednet.

MedTel's Demand for Arbitration Ex. A-1, License Agreement ¶ 9(b) (emphasis added).[3]

Pursuant to the foregoing indemnification provision, MedTel was represented in this patent

infringement action by the RatnerPrestia law firm, which also represented the other Defendants

in the case.[4]

On July 3, 2012, Daniel Gershoni, MedTel's Founder and Senior Business Development

Manager, signed an engagement letter with RatnerPrestia setting forth "the terms and conditions

upon which RatnerPrestia [would] undertake to represent [MedTel] in [the patent infringement

action]." *See* Supplementary Decl. of Todd M. Simpson in Opp'n to MedTel's Mot. for Relief

from Consent J. (hereinafter "Simpson Supplementary Rule 60(b) Decl.") Ex. 1.   The

engagement letter specified that RatnerPrestia would be representing MedTel and the two other

customers of Mednet named as Defendants (RhythmWatch and AMI) pursuant to the

indemnification provision of the License Agreement and also pursuant to a Joint Defense and

Representation Agreement among Mednet, MedTel, RhythmWatch, and AMI.  The engagement

letter further stated that in the event a conflict of interest arose between MedTel and Mednet,

MedTel agreed that RatnerPrestia would continue to represent Mednet and separate counsel

would be engaged for MedTel.

The engagement letter also recited RatnerPrestia's understanding "that MedTel24 is

represented by Dirk D. Thomas, Esq., who will be coordinating with RatnerPrestia, on behalf of

Medtel24, during this litigation," and that the firm would be "instructed by Dirk D. Thomas, Esq.

of the McKool Smith law firm on behalf of MedTel24, Inc." *Id.* at 2.  The letter noted that by

---

[3] The Demand for Arbitration is included as Exhibit 1 to MedTel's opposition to Plaintiffs' motion for contempt.

[4] AMI was also represented by two non-RatnerPrestia attorneys, though RatnerPrestia served as the company's lead counsel.

signing the engagement letter Mr. Gershoni would be "confirm[ing] that this is accurate" and listed Mr. Thomas as a "cc." *Id.* at 2-3. Mr. Thomas, however, denies that he was ever asked to be—or ever agreed to be—"co-counsel or second counsel to RatnerPrestia," and denies having any awareness that he was "listed in any retainer agreement of RatnerPrestia." Decl. of Dirk Thomas (hereinafter "Thomas Decl.") ¶ 2. Lee Sanders, MedTel's President and CEO, also denies that MedTel ever retained Mr. Thomas or his law firm to represent MedTel "in this litigation or in any communications, negotiations, or proceedings in this matter," or ever asked Mr. Thomas "to formally represent MedTel as co-counsel with RatnerPrestia." Decl. of Lee Sanders in Supp. of MedTel's Mot. for Relief from Consent J. (hereinafter "Sanders Rule 60(b) Decl.") ¶¶ 5-6. According to Mr. Sanders, the engagement letter "mischaracterizes the relationship between Mr. Thomas and MedTel." *Id.* ¶ 6.

Also on July 3, 2012, Mr. Gershoni executed the Joint Defense and Representation Agreement. Like the engagement letter, the Joint Defense Agreement recognized the potential for conflicts of interest arising out of RatnerPrestia's joint representation of multiple Defendants. The Agreement provided that RatnerPrestia would serve as lead counsel for Mednet, MedTel, RhythmWatch, and AMI, and would be compensated by Mednet. Simpson Supplementary Rule 60(b) Decl. Ex. 1, at 2. Mednet also agreed to "provide for the reasonable cost of outside 'second set of eyes' counsel for a respective defendant, should the Parties desire such outside counsel in addition to joint representation by RatnerPrestia." *Id.* With respect to conflicts, the Agreement provided that if an actual or potential conflict of interest arose and the conflict either was waivable or could be resolved by RatnerPrestia withdrawing from representing one of the parties, then RatnerPrestia would be permitted to continue to represent Mednet and any existing "second set of eyes" counsel could continue to represent the party no longer represented by

RatnerPrestia.  *Id.*  The parties also agreed to waive any waivable conflicts "at least insofar as necessary to allow RatnerPrestia to continue to separately represent Mednet in the Litigation." *Id.*

Following the completion of discovery and after hearing argument on the parties' dispositive motion, but before ruling on the motions, the Court held a final pretrial conference in this case on January 28, 2014, a Tuesday.  Trial was scheduled to begin the following Monday, February 3, 2014.  At the outset of the pretrial conference, lead defense counsel, Benjamin Leace, Esq., made an oral motion for RatnerPrestia to withdraw as counsel for Defendants due to a conflict of interest.[5]  Tr. 6, Jan. 28, 2014.  Noting the motion to withdraw was coming at the "11th hour" in a case that had been listed for trial for "quite a while," the Court indicated it would take the motion under advisement, proceed to hear argument on the pending motions in limine, and "wait and see where we are on Monday."  *Id.*

The Court then permitted Mr. Sanders, who was present in courtroom, to make a statement.  Mr. Sanders indicated he had received a letter from Mednet's "regular" (i.e., non-litigation) counsel the previous day, enclosing a consent judgment that "basically is cramming down on [MedTel] some language that we strenuously disagree with."  *Id.* at 7.  Mr. Sanders further advised that when MedTel had tried to call RatnerPrestia, its litigation counsel, it was told counsel could not talk to MedTel, leaving the company "literally at the 11th hour and 59th minute . . . with no counsel."  *Id.*  Mr. Sanders continued,

> We don't know what's going on.  No one can communicate to us, and it puts us in a very precarious position.  And I just think the Court should hear—I think this is a very difficult spot that we find ourselves in, and there has been significant

---

[5] Mr. Leace made the oral motion after the Court held a brief in-chambers conference with lead counsel for the parties, during which Mr. Leace disclosed that he needed to withdraw because a conflict had arisen in his joint representation of all Defendants.

negotiations going on in the background to settle the case, and we're prepared to go to trial. *We don't want a continuance.  We want to go through with the trial and we're ready go to, Your Honor.*

*Id.* (emphasis added).  When asked whether MedTel had a lawyer to represent it, Mr. Sanders responded:

> At this time, I don't have a lawyer.  I do have an advisor, who is a patent lawyer, that's working with us.  His name is Dirk Thomas.  He's unavailable.  He's in San Francisco in trial right now.  But he did tell me just a few minutes ago via text to let you know that he is advising us, and we just haven't had time to figure everything out yet.

*Id.* at 7-8.  The Court again noted the case had been listed "for a long, long time," leading to the following exchange:

> MR. SANDERS:  Well, we were ready, but we're—our lawyer tells us he can't talk to us now.
>
> THE COURT:  Well, get yourself a lawyer and bring your lawyer here Monday—
>
> MR. SANDERS:  We'll be ready.
>
> THE COURT:  —and we'll proceed to trial.
>
> MR. SANDERS:  Yes, sir.
>
> THE COURT:  All right?
>
> MR. SANDERS:  Thank you for the time, Your Honor.
>
> THE COURT:  So you have—you have until Monday to get a lawyer.
>
> MR. SANDERS:  Okay.
>
> THE COURT:  Okay.
>
> MR. SANDERS:  Anything else?
>
> THE COURT:  Anything else from you?
>
> MR. SANDERS:  No, sir.  I just want to be on the record with that statement.

> THE COURT:  That's fine.  You are on the record with your statement, but this case is going to move on to trial.  It's listed for Monday, and I'm going to proceed to hear arguments on defendant motions.  As you well know, it's been listed for trial for quite a bit.
>
> MR. SANDERS:  Yes, sir.
>
> THE COURT:  Okay.  Thank you.
>
> MR. SANDERS:  Thank you.

*Id.* at 8-9.  The Court then proceeded to hear argument on the numerous pending motions in limine before adjourning the conference without ruling on RatnerPrestia's motion to withdraw.

Following the pretrial conference, the parties continued to negotiate the Consent Judgment via email and by phone.[6]  Mr. Thomas participated in the negotiations on behalf of MedTel, as evidenced by his email communications with the other counsel of record, including Mr. Leace, whose motion to withdraw had not been granted, and Margaret Lurio, Esq., who appears to have been an independent attorney for Rhythm Watch and AMI.

At 3:36 p.m. on January 29, 2014, the day after the pretrial conference, CardioNet's counsel forwarded a draft of the Consent Judgment "with revised language regarding infringement" and some case law counsel had discussed to Mr. Thomas (for MedTel) and Ms. Lurio (for RhythmWatch and AMI).  Simpson Rule 60(b) Decl. Ex. 2, at 11.  Mr. Thomas responded at 4:24 p.m., proposing additional language regarding MedTel's ability to challenge the validity and/or enforceability of the patents-in-suit in a future infringement action, and stating "*[t]he rest of the Consent Judgment . . . appears acceptable once the language suggested above*

---

[6] The emails exchanged by counsel about the Consent Judgment are part of the record before this Court.  These emails also reference "discussions" or "calls" among counsel.  *See* Decl. of Todd M. Simpson in Opp'n to MedTel's Mot. for Relief from Consent J. (hereinafter "Simpson Rule 60(b) Decl.") Ex. 2, at 11 (email attaching the Consent Judgment with revised language regarding infringement and case law regarding validity and enforceability, "as discussed"); *id.* at 10 (email alluding to a 5:00 p.m. call).)

*is inserted in the appropriate place*," subject to "whatever Lee [Sanders] and Joe [Capper, CardioNet's CEO] might work out for an option to a further license beyond the one year." *Id.* at 10 (emphasis added). Mr. Thomas indicated he was not available for a 5:00 p.m. call that same day, but stated he would be "available to talk tomorrow once [CardioNet] ha[d] a revised draft of the Consent Judgment." *Id.*

At 5:07 p.m. the same day, CardioNet's counsel notified Mr. Thomas the language he had proposed was acceptable to Plaintiffs "on the condition that the other terms remain unchanged" and had been incorporated into the Consent Judgment as Paragraph 18. *Id.* at 8-9. The email also sought Ms. Lurio's confirmation that the revised Consent Judgment was "acceptable to Rhythm Watch and AMI," and asked Mr. Leace to confirm that he had "the authority to sign [the Consent Judgment] on behalf of all Defendants as counsel of record in the case." *Id.* at 9. Mr. Thomas responded approximately ten minutes later, suggesting that Paragraph 17 of the Consent Judgment should be removed as contradictory to the newly added Paragraph 18. *Id.* When CardioNet opposed removing Paragraph 17, Mr. Thomas suggested a change to the wording of the Paragraph to which CardioNet agreed. *See id.* at 7.

The following morning, January 30, 2014, at 8:58 a.m., Ms. Lurio sent an email asking Mr. Thomas to let her know if the final version of the Consent Judgment was acceptable to MedTel so that she could forward it to RhythmWatch and AMI's counsel. *Id.* at 6. Two hours later, Ms. Lurio wrote that she was "holding off sending the consent judgment to Rhyth[]mWatch and AMI's counsel" and asked Mr. Thomas and CardioNet's counsel to "let [her] know as soon as agreement is reached between Cardionet and Medtel24 so [she could] get the approval from the other defendants." *Id.* at 5. CardioNet's counsel followed up with an

email to Mr. Thomas stating "[w]e would appreciate hearing from you within the next hour.

Seems all parties are waiting for *your client*." *Id.* at 4 (emphasis added).

That afternoon, at 3:17 p.m., without taking issue with CardioNet's characterization of

his role as MedTel's counsel, Mr. Thomas advised all other counsel:

> I just heard from Lee [Sanders] and he said he has spoken to Joe [Capper] and that
> they did not come to any further resolution regarding the term of the license
> rights.  So I believe that the Consent Judgment as revised per my emails last night
> is ready to be executed.  I believe Ben [Leace] will be signing on behalf of all the
> defendants since he is still counsel of record for all defendants.

*Id.* at 4.  Mr. Leace followed up with an email at 4:06 p.m., reporting that Mr. Thomas had asked

him "to pass along that Medtel 24 will review the final consent judgment at an 8:00 board

meeting tonight to obtain final approval."  *Id.* at 2.  CardioNet's counsel responded at 5:22 p.m.,

reporting that counsel had "passed along this latest development to CardioNet," which was

"expecting a final answer tonight from MedTel," and requesting that "[w]hen the board meeting

is over, *we would like to hear from the counsel with authority to bind MedTel regarding final

approval* so all the paper work of the consent judgment can be finalized tonight."  *Id.* (emphasis

added).  At 8:42 p.m., Mr. Thomas notified CardioNet he "was just informed by MedTel24 that

[its] board has approved the Consent Judgment," and that Mr. Leace was "authorized to sign on

behalf of MedTel24."  *Id.*  At 12:17 a.m. on January 31, 2014, Mr. Leace reported that he would

forward "a signed copy of the consent judgment on behalf of all defendants first thing in the am."

*Id.* at 1.

At no time while the Consent Judgment was being negotiated did Mr. Thomas—or

anyone else acting on behalf of MedTel—request a continuance of the February 3, 2015, trial

date.  While Mr. Thomas has submitted a declaration stating he "would not have been able to

appear to request a continuation of trial and . . . could not have taken the case on the eve of trial,"

Thomas Decl. ¶ 4, there is no evidence that MedTel made any efforts to seek separate counsel who could represent it, at least for purposes of requesting a continuance of the trial, given Mr. Thomas's inability to do so.[7]

On January 31, 2014, at 2:05 p.m., CardioNet filed the Consent Judgment, signed by Mr. Leace as counsel of record for all Defendants, on the docket in the above-captioned action. After a brief teleconference with the parties, this Court signed the Consent Judgment, which was then docketed. Under the terms of the Consent Judgment, the Defendants agreed that "[m]aking, using, offering to sell or selling in the United States the accused Heartrak ECAT system, including (i) a Heartrak ECAT Monitor; (ii) a Heartrak ECAT Communicator; and (iii) CardioStation or eCardiostation software infringes [the five patents-in-suit]," Consent J. ¶ 13, and agreed that, "[e]xcept as licensed or otherwise agreed to," each of them is "permanently enjoined and restrained from infringing, contributorily infringing or inducing the infringement of the [patents-in-suit]," *id.* ¶ 14. The Consent Judgment granted MedTel, RhythmWatch, and AMI "a limited, non-exclusive license to make, use, sell or offer for sale, the Heartrak ECAT System in the United States" for a period of one year from the date of the Judgment, but provided that, upon expiration of the one-year period,

> all inventories of the Heartrak ECAT System in the United States belonging to or held by Medtel24, RhythmWatch or AMI, including all related software/source code, including CardioStation and eCardioStation, hardware, including the Heartrak ECAT Monitor and Communicator, and documentation shall be delivered, at Medtel24's, RhythmWatch's and AMI's respective expenses, to Plaintiffs at 1 E. Beacon Light Ln. Chester, PA 19013, to be received by Plaintiffs no later than 15 days after the one year date.

---

[7] Mr. Sanders asserts that, given the timing and circumstances of RatnerPrestia's motion to withdraw, MedTel "could not retain new counsel to present a new defense to the Court." Sanders Rule 60(b) Decl. ¶ 12. Notably, Mr. Sanders does not mention any efforts by MedTel to engage new counsel to seek a continuance of the trial date, despite his assurance at the pretrial conference that MedTel would be ready for trial, as scheduled.

*Id.* ¶ 16.[8]

Also on January 31, 2014, BioTelemetry, Inc., through CardioNet, LLC, its wholly owned subsidiary, acquired Mednet, UMI, Heartcare, and UML pursuant to a Stock Purchase Agreement. *See* MedTel's Mot. to Stay Ex. A (SEC Form 8-K reporting the acquisition). Under the terms of the Stock Purchase Agreement, CardioNet purchased all of the outstanding capital stock of the Mednet entities for $5.5 million in cash and 96,649 shares of BioTelemetry's common stock, and agreed to assume approximately $10 million of outstanding secured debt of the Mednet entities. *Id.* MedTel was apparently unaware of the acquisition until "moments before" the January 28, 2014, pretrial conference. MedTel's Demand for Arbitration Ex. H; *see also* MedTel's Mot. for Relief from Consent J. 7 (noting the duress MedTel was under in deciding whether to sign the Consent Judgment "was compounded further with the surprise news that Plaintiff was purchasing co-Defendant Mednet and that a deal was already in place by the January 28, 2014 hearing").

After the Consent Judgment was entered, MedTel sought to negotiate an extension of the one-year license period with CardioNet, but the parties were unable to reach an agreement. *See* MedTel's Demand for Arbitration Ex. H; Simpson Rule 60(b) Decl. Ex. 3. On January 30, 2015, 364 days after the Consent Judgment was entered and the day before the day before the one-year license period was to expire, MedTel filed the instant motion for relief from the Consent Judgment pursuant to Federal Rule of Civil Procedure 60(b). The same day, MedTel filed a demand for arbitration against Mednet, UMI, UML, and Heartcare pursuant to the License

---

[8] Mednet and its affiliated companies (UMI, Heartcare, and UML) were required to immediately return to CardioNet all existing inventory of the Heartrak ECAT System in the United States belonging to or held by them. Consent J. ¶ 15.

Agreement between MedTel and UMI.  The demand for arbitration also names BioTelemetry, Inc./CardioNet, LLC, as the successor and/or assignee to the rights and obligations in the License Agreement, as a Respondent.  In the arbitration, MedTel alleges the Respondents have breached various provisions of the License Agreement and accuses Respondents of tortiously interfering with MedTel's business relations, contract, and/or economic advantage.

On February 6, 2015, CardioNet filed a motion for a finding of contempt of the Consent Judgment by MedTel and for appropriate sanctions, based on MedTel's continued use of the Heartrak ECAT System following expiration of the one-year license period.  MedTel thereafter moved to stay enforcement of the Consent Judgment pending disposition of MedTel's Rule 60(b) motion and/or pending a determination of CardioNet's indemnification obligations to MedTel in the pending arbitration.  CardioNet seeks a stay of the arbitration pending resolution of the enforcement of the Consent Judgment and also seeks sanctions against MedTel pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the Court's inherent authority.  The Court held oral argument on all pending motions on May 7, 2015.

**DISCUSSION**

Rule 60(b) authorizes a district court, "[o]n motion and just terms," to "relieve a party or its legal representative from a final judgment" on five specifically enumerated grounds— including for "fraud . . . , misrepresentation, or misconduct by an opposing party," Fed. R. Civ. P. 60(b)(3), and when "the judgment is void," Fed. R. Civ. P. 60(b)(4)—as well as for "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6).  Relief pursuant to Rule 60(b) is "extraordinary relief which should be granted only when extraordinary justifying circumstances are present"; hence, a movant seeking to reopen a final judgment "bears a heavy burden" to show such relief is warranted.  *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991) (citations omitted).

MedTel asks this Court to set aside the Consent Judgment on three grounds. First, MedTel argues relief is warranted pursuant to Rule 60(b)(4) because MedTel was not represented by counsel when the Consent Judgment was executed, thus rendering the Judgment void. Second, MedTel argues relief should be granted because MedTel was under duress when it approved the Consent Judgment due to the loss of its trial counsel the week before the scheduled trial date. Third, MedTel argues relief is warranted pursuant to Rule 60(b)(3) because MedTel believes RatnerPrestia intentionally delayed disclosing the acquisition transaction between CardioNet and Mednet and the firm's own conflict of interest until the week before trial, thereby depriving MedTel of the ability to fully and fairly prepare for trial. MedTel also seeks discovery regarding CardioNet's acquisition of Mednet and its affiliated companies, which MedTel believes will confirm its suspicion that "counsel and the parties were well aware of the subject acquisition prior to the January 28, 2014 hearing," but failed to inform MedTel and the Court. *See* MedTel's Motion for Relief from Consent J. 10.

A void judgment, for purposes of Rule 60(b)(4), "is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010). As the Supreme Court has recognized, "[t]he list of such infirmities is exceedingly short. . . . Rule 60(b)(4) applies only in the rare instance where a judgment is premised on a certain type of jurisdictional error"—i.e., where the court rendering the judgment "lacked even an arguable basis for jurisdiction"—or "on a violation of due process that deprives a party of notice or the opportunity to be heard." *Id.* at 270-71 (citation and internal quotation marks omitted); *see also Marshall v. Bd. of Educ.*, 575 F.2d 417, 422 & n.19 (3d Cir. 1978) (holding a judgment is void "if the court that rendered it lacked jurisdiction of the subject matter or the parties or entered a decree which is not within the

powers granted to it by law," and distinguishing a "total want of jurisdiction," which renders a judgment void, from "an error in the exercise of jurisdiction," which does not (citation and internal quotation marks omitted)).

As MedTel notes, the law is well-settled that "a corporation may appear in the federal courts only through licensed counsel." *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 202 (1993); *see also Simbraw, Inc. v. United States*, 367 F.2d 373, 373 (3d Cir. 1966). Invoking this principle, some courts have set aside as void judgments entered based on stipulations, where the stipulation was executed by a corporation that was not represented by an attorney. *See Grace v. Bank Leumi Tr. Co. of N.Y.*, 443 F.3d 180, 193 (2d Cir. 2006) (holding a judgment entered on a stipulation of settlement was void where the stipulation was executed by a corporate officer who was not a lawyer and who "stood only to gain by confessing judgment on behalf of [the corporation]"); *Graham Kandiah, LLC v. JPMorgan Chase Bank, N.A.*, No. 08-6956, 2009 WL 1704570, at *2 (S.D.N.Y. June 18, 2009) (holding a judgment of dismissal pursuant to a notice of voluntary dismissal filed by the sole member of an LLC was void because the LLC was not represented by counsel at the time the member filed the dismissal notice); *cf. Aloha Leasing v. Advanced Bus. Sys. Unlimited*, No. 93-385, 1994 WL 631041, at *3-4 (N.D.N.Y. Nov. 7, 1994) (declining to enforce a default remedies provision in several stipulations of dismissal and settlement where the stipulations were not signed by an attorney).

MedTel argues this Court should set aside the Consent Judgment as void because MedTel was not represented by counsel when it entered into the Consent Judgment. The Court disagrees. First, unlike in the cases cited above, the Consent Judgment in this case was executed by an attorney—Mr. Leace—on behalf of all Defendants, including MedTel. Although Mr. Leace made an oral motion to withdraw as counsel for Defendants at the January 28, 2014, pretrial

conference due to a conflict of interest, the Court did not grant the motion, but took it under advisement. Consequently, Mr. Leace and his law firm remained counsel of record for all Defendants, including MedTel, when the Consent Judgment was executed and entered.[9] *See Ohntrup v. Makina ve Kimya Endustrisi Kurumu*, 760 F.3d 290, 295 (3d Cir. 2014) (noting the decision whether to allow an attorney to withdraw is committed to the district court's discretion, at least to the point where the attorney no longer serves a meaningful purpose in the case); Local R. Civ. P. 5.1(c) ("An attorney's appearance may not be withdrawn except by leave of court, unless another attorney of this court shall at the same time enter an appearance for the same party."). Notwithstanding the pendency of the motion to withdraw, and with full knowledge that a conflict existed, MedTel, through Mr. Thomas, specifically authorized Mr. Leace to sign the Consent Judgment on the company's behalf. Simpson Rule 60(b) Decl. Ex. 2, at 2 (email from Thomas to other counsel advising that MedTel's board had approved the Consent Judgment and that Leace "[wa]s authorized to sign on behalf of MedTel24").

While Mr. Leace may not have advised MedTel regarding the terms of the Consent Judgment once a conflict arose,[10] MedTel was not without legal assistance regarding the

---

[9] There is no evidence that MedTel ever sought to dismiss RatnerPrestia.

[10] According to Mr. Sanders, as of the time of the pretrial conference, MedTel had not had an opportunity to discuss the language of the Consent Judgment with RatnerPrestia. Sanders Rule 60(b) Decl. ¶ 3. Mr. Sanders also states the lawyers at RatnerPrestia "informed MedTel that they would not communicate, assist or provide any information to MedTel about the litigation and the scheduled trial," leading MedTel to understand "that it was without the benefit of legal representation." *Id.* ¶ 8; Tr. 7, Jan. 28, 2014 (statement by Sanders at the pretrial conference that when MedTel "tried to call [its] counsel to find out what's going on [after receiving the Consent Judgment], [it was] basically told we can't talk to you"). Although CardioNet questions MedTel's assertion in its Rule 60(b) motion that RatnerPrestia "refused to speak with and provided no assistance to MedTel" after the pretrial conference, citing an email from Mr. Leace referencing a communication with Mr. Thomas about a MedTel board meeting to review the Consent Judgment, *see* Pls.' Opp'n to MedTel's Mot. for Relief from Consent J. 6 (quoting

Judgment.  As noted, by January 29, 2014, the day after the pretrial conference, Mr. Thomas, an experienced patent lawyer, was involved in negotiations regarding the Consent Judgment on MedTel's behalf.  Although Mr. Sanders characterizes Mr. Thomas as having advised MedTel "almost exclusively about paragraph eighteen (18) of the Consent Judgment [concerning MedTel's ability to challenge the validity and enforceability of the patents-in-suit in a future infringement action] and its implications for MedTel," Sanders Rule 60(b) Decl. ¶ 9, Mr. Thomas's own emails with other counsel reflect that his input extended beyond proposing language that was ultimately included in the Consent Judgment as Paragraph 18.  *See* Simpson Rule 60(b) Decl. Ex. 2, at 10 (email from Thomas stating "[t]he rest of the Consent Judgment . . . appears acceptable [once Paragraph 18 is added]"); *id.* at 7-8 (email from Thomas proposing first the elimination of, then a revision to, Paragraph 17).[11]  Mr. Thomas also appears to have participated in a conversation with other counsel in which the language in the Consent Judgment regarding infringement, as well as case law regarding validity and enforceability, were discussed. *See* Simpson Rule 60(b) Decl. Ex. 2, at 11.

Notably, while Mr. Thomas denies that he was counsel for MedTel "with regard to this lawsuit," Thomas Decl. ¶ 2, he concedes that he "look[ed] over" the Consent Judgment at Mr.

---

MedTel's Rule 60(b) Mot. 4), the Court assumes, for purposes of this motion, that RatnerPrestia did not advise MedTel with respect to the Consent Judgment because of the firm's conflict.

[11] In his Declaration, Mr. Sanders attempts to distance MedTel from Mr. Thomas's emails, noting MedTel was not copied on the emails and did not have access to them as it has been unable to obtain its litigation file.  *See* Sanders Rule 60(b) Decl. ¶ 10.  Mr. Sanders does not suggest, however, that Mr. Thomas's emails were unauthorized or that MedTel was unaware that Mr. Thomas was communicating with CardioNet's counsel and RatnerPrestia on its behalf.  To the contrary, Mr. Sanders admits that Mr. Thomas "facilitated communications concerning [the Consent Judgment] between Plaintiffs' counsel and MedTel's former trial counsel."  Aff. of Lee Sanders, submitted in opposition to CardioNet's contempt motion (hereinafter "Sanders Contempt Aff.") ¶ 6.

Gershoni's request and provided "general patent advice" with respect to the language of the Consent Judgment, *see id.* ¶ 3. And Mr. Sanders, while denying that MedTel ever retained Mr. Thomas or his law firm to represent it in this matter, Sanders Rule 60(b) Decl. ¶ 5, nevertheless admits that Mr. Thomas's "advice to MedTel is privileged," Sanders Contempt Aff. ¶ 6. Although the parties dispute the nature and extent of Mr. Thomas's role in this case,[12] it is undisputed that MedTel consulted Mr. Thomas, an experienced patent attorney, about the Consent Judgment and that Mr. Thomas provided MedTel with legal advice regarding the Judgment, even successfully negotiating changes in the wording of the Judgment. In light of Mr. Thomas's involvement in the negotiations regarding the Consent Judgment, and given that MedTel expressly authorized Mr. Leace to sign the Consent Judgment for MedTel as its counsel of record, MedTel cannot show the Consent Judgment is void for lack of counsel.

MedTel's allegations of duress also do not provide a basis for this Court to set aside the Consent Judgment. Under Pennsylvania law,[13] "[d]uress has been defined as that degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness." *Carrier v.*

---

[12] As CardioNet notes, MedTel's engagement letter with RatnerPrestia—which Mr. Gershoni signed on behalf of MedTel—identifies Mr. Thomas as an attorney for MedTel who would coordinate with RatnerPrestia in the patent litigation. Simpson Supplementary Rule 60(b) Decl. Ex. 1, at 2. Although the engagement letter bears a notation that it was copied to Mr. Thomas, Mr. Thomas denies any awareness of the letter and denies that he was ever asked to be, or agreed to be, "co-counsel or second counsel to RatnerPrestia." Thomas Decl. ¶ 2. For purposes of this motion, the Court assumes Mr. Thomas in fact was not involved in this case until the Consent Judgment was being negotiated.

[13] MedTel urges the Court to apply the Pennsylvania standard for duress. *See* MedTel's Mot. for Relief from Consent J. 5 (citing federal and state cases applying the Pennsylvania standard). CardioNet does not dispute that Pennsylvania law supplies the appropriate standard for evaluating MedTel's allegations of duress. *See* Pls.' Opp'n 7 n.8 (distinguishing this case on its facts from MedTel's cited cases).

*William Penn Broad. Co.*, 233 A.2d 519, 521 (Pa. 1967) (citation omitted); *see also Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885, 893-94 & n.17 (3d Cir. 1975) (applying the *Carrier* standard in deciding whether to set aside a release based on allegations of duress).  As MedTel notes, a party's access to counsel with respect to an agreement is relevant in determining whether the party approved the agreement under duress.  Where a party was free to consult with counsel before entering into a settlement, "there can be no duress," absent "threats of actual bodily harm."  *Carrier*, 233 A.2d at 521 (citation omitted); *see also Thomas v. Sandstrom*, 459 F. App'x 93, 95 (3d Cir. 2012) (rejecting a claim of duress as insufficient to void a settlement agreement where the plaintiff "was represented by counsel throughout the entire mediation and has not alleged or presented any evidence that he was threatened with bodily harm if he did not sign the General Release"); *Three Rivers Motor Co.*, 522 F.2d at 894 (rejecting a duress defense to a release by a party whose counsel "was an active participant in the negotiations [regarding the release] and, in fact, extracted a substantial concession from [the opposing party] prior to the signing of the release").

MedTel argues its assent to the Consent Judgment was the product of duress because it "was not provided the opportunity to retain counsel for the purposes of the Trial" due to the timing of RatnerPrestia's motion to withdraw the week before the scheduled trial date.  MedTel's Reply in Supp. of Mot. for Relief from Consent J. 5.  By MedTel account, "[i]t was forced to accept the material terms of the Consent Judgment because had it refused the Trial would have proceeded three (3) days later and MedTel was without trial counsel."  *Id.* at 6.

This argument overlooks the critical fact that MedTel never requested a continuance of the trial date, either during or at any time after the pretrial conference at which RatnerPrestia moved to withdraw from the case.  To the contrary, in his statement to the Court after Mr. Leace

made his oral motion to withdraw, Mr. Sanders advised that MedTel *did not want a continuance* but wanted to "go through with the trial" and was "ready to go." Tr. 7, Jan. 28, 2014. Mr. Sanders also stated that although MedTel did not have a lawyer to represent it at trial, the company had a patent lawyer (Mr. Thomas) advising it and "just ha[d]n't had time to figure everything out yet." *Id.* at 7-8. In response to these representations, this Court instructed Mr. Sanders to "get yourself a lawyer and bring your lawyer here Monday, . . . and we'll proceed to trial," and Mr. Sanders agreed, "We'll be ready." *Id.* at 8. While MedTel now cites the Court's suggestion that MedTel had "until Monday to get a lawyer" as proof that no continuance would be granted, the Court was never presented with—and thus had no occasion to rule on—a continuance request. Had MedTel wished to press forward to trial rather than settle the case, it could, at a minimum, have requested a continuance of the trial date. *See Lannan v. Reno*, 139 F.3d 901 (7th Cir. 1998) (unpublished) ("One who had an alternative to signing a settlement agreement cannot later claim duress as a defense to the formation of a contract.").

After MedTel's failure to seek a continuance was raised at oral argument on the instant motion, MedTel submitted a declaration from Mr. Thomas in which he states, without explanation, that he "would not have been able to appear to request a continuation of trial and . . . could not have taken the case on the eve of trial." Thomas Decl. ¶ 4. Even crediting Mr. Thomas's assertion that he could not have requested a continuance on MedTel's behalf, there is no evidence MedTel made any effort to identify counsel who could do so.

MedTel also asserts that RatnerPrestia's conflict and request to withdraw left it "without proper counsel to assist in all negotiations of the consent Judgment," MedTel's Mot. for Relief from Consent J. 6, but this assertion, too, is contradicted by the record. As set forth above, the record reflects that MedTel had ample opportunity to consult with independent counsel who

actively participated in the negotiation of the Consent Judgment.  MedTel's duress argument is therefore without merit.

Finally, MedTel seeks relief from the Consent Judgment pursuant to Rule 60(b)(3), arguing RatnerPrestia's failure to timely disclose the acquisition transaction between CardioNet and Mednet and the firm's own conflict of interest prevented MedTel from presenting a full and fair defense at trial.[14]  Rule 60(b)(3) permits a court to set aside a judgment for "fraud . . . , misrepresentation, or misconduct by an opposing party."  To obtain relief pursuant to this provision, "the movant must establish that the adverse party engaged in fraud or other misconduct, and that this conduct prevented the moving party from fully and fairly presenting his case."  *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983).  "To sustain the burden of proving fraud and misrepresentation under Rule 60(b)(3), the evidence must be clear and convincing."  *King v. Banner*, No. 07-704, 2010 WL 3656030, at *2 (E.D. Pa. Sept. 17, 2010) (quoting *Brown v. Pa. R.R. Co.*, 282 F.2d 522, 527 (3d Cir. 1960)).

MedTel does not dispute that Mednet was entitled to settle with CardioNet and to enter into the acquisition transaction.  Rather, MedTel argues the acquisition created a nonwaivable conflict of interest for RatnerPrestia that should have been disclosed sooner.  MedTel posits that, given that the acquisition transaction closed on January 31, 2014, RatnerPrestia must have known about it before the January 28, 2014, pretrial conference and should have disclosed it "at a reasonable time prior to the [pretrial conference]."  *See* MedTel's Reply in Supp. of Mot. for Relief from Consent J. 7.

---

[14]  Although MedTel's argument for relief pursuant to Rule 60(b)(3) focuses primarily on RatnerPrestia's and/or Mednet's failures to disclose, MedTel also appears to fault CardioNet and its counsel for not disclosing that the acquisition transaction was being negotiated.  MedTel does not identify any reason why CardioNet, its adversary in this action, would have been required to disclose its settlement negotiations with a codefendant.

Even assuming that RatnerPrestia was aware of the conflict of interest before January 28, 2014, but failed to timely disclose it, MedTel has not shown the delay in disclosing the conflict prevented MedTel from fully and fairly presenting its case.  Although MedTel suggests the disclosure of the conflict was timed so as to pressure MedTel to submit to the Consent Judgment without counsel, *see id.*, when asked at oral argument what harm MedTel suffered as a result of the nondisclosure, MedTel stated only that had it known of the conflict earlier, "depending on how much earlier, there may have been a potential for a lawyer to come in and ask for a continuance," Tr. 19, May 7, 2015.  As discussed above, however, there was nothing to prevent MedTel from seeking a continuance of the trial date.  MedTel also speculates that because of the likely settlement, RatnerPrestia "stopped working or limited its Trial preparation in light of the Transaction—all unknown to MedTel and contrary to the Trial."  MedTel's Reply in Supp. of Mot. for Relief from Consent J. 7.  MedTel offers no evidence to support this contention, despite claiming at oral argument that it "ha[s] evidence that RatnerPrestia told my client that they were not ready for trial." Tr. 17, May 7, 2015.  Moreover, even assuming RatnerPrestia limited its trial preparation at some point because of its conflict,[15] it is not clear how such conduct would have affected MedTel's ability to present its case.  By MedTel's account, RatnerPrestia had a nonwaivable conflict as a result of the acquisition transaction and could not have represented MedTel at trial in any event.  There is no evidence MedTel attempted to determine whether the conflict was waivable, such that RatnerPrestia could have continued to represent MedTel at trial,

---

[15] While this Court is not privy to the details of RatnerPrestia's trial preparations, the Court notes that counsel vigorously briefed and argued a dozen summary judgment motions between November 26, 2013, and January 14, 2014, and a dozen motions in limine between January 10 and 28, 2014.

and no reason why, in the event of a waiver, RatnerPrestia could not have requested a continuance of the trial.[16]

Because MedTel has not satisfied its heavy burden to show relief pursuant to Rule 60(b) is warranted, MedTel's motion for relief from the Consent Judgment will be denied.[17]   An appropriate order follows.

BY THE COURT:

___/s/ Juan R. Sánchez_____
Juan R. Sánchez, J.

---

[16]  MedTel seeks discovery regarding the background and "hidden workings" behind the acquisition transaction so as to establish that RatnerPrestia was aware of the acquisition and the firm's conflict of interest before the January 28, 2014, pretrial conference.  Because MedTel would not be entitled to relief, even if it could show the conflict was not timely disclosed, such discovery is unnecessary.

[17]  Having rejected MedTel's arguments for relief from the Consent Judgment on their merits, the Court need not address CardioNet's alternative argument that MedTel's Rule 60(b) motion is untimely because MedTel unreasonably delayed in filing it by waiting until the day before the one-year period within which to file a motion pursuant Rule 60(b)(1), (2), or (3) expired.