IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARDIONET, LLC, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 12-2517 |
| | : | |
| MEDNET HEALTHCARE TECHNOLOGIES, INC., et al. | : | |

## ORDER

AND NOW, this 2nd day of October, 2015, upon consideration of Plaintiffs CardioNet, LLC, and Braemar Manufacturing, LLC's (collectively, CardioNet) Motion for a Finding of Contempt of the Consent Judgment by MedTel24, Inc. and for Appropriate Sanctions, MedTel24, Inc.'s (MedTel) opposition thereto, and the parties' numerous additional written submissions in support of and opposition to the contempt motion, and following an oral argument on May 7, 2015, and a contempt hearing on September 21 and 29, 2015, it is ORDERED the Motion (Document 274) is GRANTED insofar as the Court finds MedTel is in contempt of ¶ 16 of the Consent Judgment.[1]  The Court reserves ruling on whether MedTel is

---

[1] CardioNet asks this Court to find MedTel in contempt of several provisions of the Consent Judgment by which the parties agreed to resolve this patent infringement action concerning the Heartrak ECAT System, a cardiac monitoring system used to monitor, analyze, and report patient cardiac activity during a monitoring period prescribed by the patient's physician.  Paragraph 16 of the Consent Judgment grants MedTel "a limited, non-exclusive license to make, use, sell or offer for sale, the Heartrak ECAT System in the United States for a period of one (1) year from the date of this Consent Judgment," but provides "[t]hereafter, all inventories of the Heartrak ECAT System in the United States belonging to or held by MedTel24, . . . including all related software/source code, including CardioStation and eCardioStation, hardware, including the Heartrak ECAT Monitor and Communicator, and documentation shall be delivered, at Medtel24's . . . expense[], to Plaintiffs . . . , to be received by Plaintiffs no later than 15 days after the one year date."  Consent J. ¶ 16.  The Consent Judgment was entered on January 31, 2014; hence, the one-year license period expired on January 31, 2015, and MedTel was required to deliver the materials specified in ¶ 16 to CardioNet no later than February 15, 2015.

To prove civil contempt, a movant must establish, by clear and convincing evidence, "(1) that a valid order of the court existed; (2) that the defendant[] had knowledge of the order; and (3) that the defendant[] disobeyed the order."  *Marshak v. Treadwell*, 595 F.3d 478, 485 (3d Cir.

2009) (citation and internal quotation marks omitted); *see also John T. ex rel. Paul T. v. Del. Cnty. Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003). To be enforceable by contempt, the order in question must be "specific and definite." *Harris v. City of Phila.*, 47 F.3d 1342, 1350 (3d Cir. 1995) (citation omitted). "[W]here there is ground to doubt the wrongfulness of the conduct, [the defendant] should not be adjudged in contempt." *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994) (citation and internal quotation marks omitted).

It is undisputed that the first requirement—the existence of a valid court order—is satisfied here. A consent judgment, "although negotiated by the parties, is a judicial act" possessing "the same force with regard to res judicata and collateral estoppel as a judgment entered after a trial on the merits." *Interdynamics, Inc. v. Firma Wolf*, 653 F.2d 93, 96-97 (3d Cir. 1981). A consent judgment is enforceable by exercise of the court's contempt powers. *See id.* at 97.

It is also undisputed that MedTel had knowledge of the Consent Judgment. Indeed, at the contempt hearing, Lee Sanders, MedTel's CEO, testified he had read ¶ 16 of the Judgment both before and after it was entered. Contempt Hr'g Tr. 128, Sept. 21, 2015.

As to the third requirement for a finding of contempt—whether MedTel disobeyed the Consent Judgment—the relevant facts are not in dispute. MedTel admits it currently possesses multiple copies of the CardioStation software, including two copies on hard drives, one or two copies on backup servers, and, possibly, one additional copy. *Id.* at 126-28; *see also id.* at 137; Alima Dep. 18. In addition, MedTel admits it may have given a damaged ECAT monitor to its counsel for safekeeping. *See* Contempt Hr'g Tr. 129-30, Sept. 21, 2015. It is undisputed MedTel has not delivered these materials, or any documentation it may possess regarding the Heartrak ECAT System, to CardioNet. *Id.* at 31, 125-26, 128. In fact, MedTel admits it has no intention of stopping its ongoing use of the CardioStation software unless this Court directs it to do so. *Id.* at 126.

At the contempt hearing, MedTel argued for the first time that it is not required to deliver the CardioStation software to CardioNet because MedTel does not hold the software in "inventory," a term MedTel argues should be understood to refer only to property held for sale, consistent with the term's meaning under the Uniform Commercial Code (UCC) or Generally Accepted Accounting Principles (GAAP). *See id.* at 133, 135, 194-95. Although MedTel's business previously included selling Heartrak ECAT Monitors and Communicators to physicians, MedTel has never sold the CardioStation software, but instead uses the software to process data obtained from the Monitors and Communicators in order to provide monitoring services for Heartrak ECAT devices. *See id.* at 108, 118, 137, 223-24. Because it does not hold the software for sale to customers, MedTel argues it has no inventories of the software and therefore need not deliver the copies of the software it does possess to CardioNet. The Court disagrees.

For purposes of enforcement, a court must interpret a consent judgment "as a contract, to which the governing rules of contract interpretation apply," and must "discern the scope of [the] consent judgment by review of what is within the four corners of the consent, not by reference to 'what might satisfy the purposes of one of the parties to it.'" *Harley-Davidson, Inc. v. Morris*, 19 F.3d 142, 148 (3d Cir. 1994) (quoting *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 574 (1984)). The court must attempt to construe the judgment "so as to give meaning to all of its words and phrases," *Halderman v. Pennhurst State Sch. & Hosp.*, 901 F.2d 311, 318 (3d Cir. 1990), and must interpret the language used by the parties "in accordance with its generally

prevailing meaning unless the parties manifest a different intention or the words are technical," *Fox v. U.S. Dep't of Hous. & Urban Dev.*, 680 F.2d 315, 320 (3d Cir. 1982).

Paragraph 16 requires MedTel to deliver to CardioNet "all inventories of the Heartrak ECAT System in the United States belonging to or held by MedTel24, . . . *including all related software/source code, including CardioStation and eCardioStation*, hardware, including the Heartrak ECAT Monitor and Communicator, *and documentation*." Consent J. ¶ 16 (emphasis added). By specifying that the inventories of the Heartrak ECAT System that must be delivered include not only items MedTel sold to physicians (i.e., Monitors and Communicators) but also items MedTel never sold (i.e., software, source code, and documentation), ¶ 16 makes clear the term "inventory" is not limited to items held for sale, but instead refers to the complete list of all of the enumerated components of the Heartrak ECAT System belonging to or held by MedTel. *See Inventory*, *Merriam-Webster*, http://www.merriam-webster.com/dictionary/inventory (last visited Oct. 1, 2015) (defining "inventory" as, inter alia, "a complete list of the things that are in a place"); *Inventory*, *Oxford English Dictionary*, http://www.oed.com/view/Entry/98981?rskey=Aswbq0&result=1#eid (last visited Oct. 1, 2015) (defining "inventory" as, inter alia, "[a] list, catalogue; a detailed account"). Precisely because the software, source code, and documentation related to the Heartrak ECAT System are not items sold to consumers, interpreting the term "inventories" as MedTel advocates would render the inclusion of these items in ¶ 16's definition of inventory meaningless.

While the term "inventory" may in some contexts refer to goods held for sale, *see, e.g.*, 13 Pa. Cons. Stat. Ann. § 9102(a) (defining "inventory," for purposes of Division 9 of Pennsylvania's version of the Uniform Commercial Code, concerning secured transactions, to include "[g]oods, other than farm products, which . . . are held by a person for sale or lease or to be furnished under a contract of service"), nothing in the Consent Judgment suggests the parties intended the UCC or GAAP definition of the term to be controlling here. Although at the contempt hearing MedTel's CEO stated he believed ¶ 16 did not require MedTel to return the software because "[i]t wasn't in inventory," Contempt Hr'g Tr. 135, Sept. 21, 2015, "[t]he relevant search . . . is not for the subjective intention of the parties but what (their) words would mean in the mouth of a normal speaker of English, using them in the circumstances in which they were used," *Fox*, 680 F.2d at 320 (citation and internal quotation marks omitted). Moreover, Sanders's email communications prior to the expiration of the license period contradict his explanation. *See* Pls.' Hr'g Ex. PX-10 (January 20, 2015, email from Sanders to Joseph Capper, CardioNet's CEO, requesting an extension of the one-year license period because MedTel "could not be possibly ready to develop a new product" within the one-year window, and "one year is not enough time to complete the transfer of the many accounts to new technology").

Because ¶ 16 of the Consent Judgment unambiguously requires MedTel to deliver any CardioStation software belonging to or held by MedTel to CardioNet within 15 days after the expiration of the one-year license period, i.e., by February 15, 2015, and because it is undisputed that MedTel continues to possess multiple copies of the CardioStation software, the Court finds CardioNet has established by clear and convincing evidence that MedTel is in contempt of ¶ 16 of the Consent Judgment.

also in contempt of ¶¶ 13-14 and/or ¶ 19 of the Consent Judgment and CardioNet's request for damages. These issues will be addressed in a separate opinion, which will also supplement the Court's findings and analysis with respect to ¶ 16.

It is further ORDERED:

1. MedTel must deliver to CardioNet, within 21 days of the date of this Order, the materials identified in ¶ 16 of the Consent Judgment, including, but not limited to, all software/source code related to the Heartrak ECAT System, including CardioStation and eCardioStation, and all documentation related to the Heartrak ECAT System. MedTel shall not retain any version or copy of the software/source code, including CardioStation and eCardioStation.

2. MedTel's CEO, Mr. Lee Sanders, shall submit to the Court, within 21 days of the date of this Order, a declaration executed under penalty of perjury confirming that all of the materials identified in ¶ 16 of the Consent Judgment have been delivered, including, but not limited to, all software/source code related to the Heartrak ECAT System, including CardioStation and eCardioStation, and all documentation related to the Heartrak ECAT System.

3. To ensure compliance with the foregoing requirements, MedTel shall be fined $10,000 per day, payable to CardioNet, for each day beyond the 21 days that MedTel fails to deliver the materials in accordance with ¶ 1 of this Order. Mr. Sanders shall be fined $10,000 per day, payable to CardioNet, for each day beyond the 21 days that he fails to submit a declaration of compliance in accordance with ¶ 2 of this Order.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.