IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARDIONET, LLC, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 12-2517 |
| | : | |
| MEDNET HEALTHCARE | : | |
| TECHNOLOGIES, INC., et al. | : | |

**<u>ORDER</u>**

AND NOW, this 1st day of February, 2016, upon consideration of Plaintiffs CardioNet, LLC and Braemar Manufacturing, LLC's Petition for Attorneys' Fees, which Defendant MedTel24, Inc. has not opposed, it is ORDERED the Petition (Document 390) is GRANTED. Plaintiffs are awarded attorneys' fees and costs in the amount of $975,176.73.[1]

---

[1] By Orders of October 2, 2015, and November 23, 2015, this Court found Defendant MedTel24, Inc. (MedTel) in contempt of the January 31, 2014, Consent Judgment by which the parties agreed to resolve this patent infringement action. In the November 23 Order, this Court awarded Plaintiffs CardioNet, LLC and Braemar Manufacturing, LLC (collectively, CardioNet) reasonable attorneys' fees and costs associated with prosecuting the contempt motion in an amount to be determined by the Court following submission of an appropriate fee petition. On December 7, 2015, CardioNet filed the instant petition for attorneys' fees, in accordance with the deadline in the November 23 Order. Although the Order directed MedTel to respond to the petition on or before December 21, 2015, MedTel has not submitted a response to date.

In the contempt setting, "the innocent party is entitled to be made whole for the losses it incurs as the result of the contemnor['s] violations, including reasonable attorneys' fees and expenses." *Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 941 (3d Cir. 1995). As the Third Circuit has recognized, the cost of bringing the violation of a court order to the court's attention "is part of the damages suffered by the prevailing party," *Robin Woods Inc. v. Woods*, 28 F.3d 396, 400 (3d Cir. 1994) (quoting *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977)); hence, it is "[o]nly with an award of attorneys' fees" that the prevailing party can "be restored to the position it would have occupied had [the contemnor] complied with the [order]," *id.*

As in the statutory fee context, in determining the amount of fees to award in a contempt proceeding, courts in the Third Circuit employ the lodestar approach, "multiplying the number of hours reasonably expended on the [contempt] litigation times a reasonable hourly rate." *Sullivan v. Carrigan*, No. 86-3696, 1988 WL 48557, at *2 (E.D. Pa. May 12, 1988) (quoting *Blum v. Stenton*, 465 U.S. 886, 888 (1984)); *see also Ranco Indus. Prods. Corp. v. Dunlap*, 776 F.2d 1135, 1140 (3d Cir. 1985) (noting the setting of a reasonable attorneys' fee in a contempt case requires inquiry into "a reasonable hourly rate *and* a determination as to whether it was

reasonable to expend the number of hours in a particular case" (quoting *Ursic v. Bethlehem Mines*, 719 F.2d 670, 676 (3d Cir. 1983))).  In light of the compensatory purpose attorneys' fee awards serve in contempt proceedings, however, the Third Circuit has characterized the formula for awarding fees in the contempt context as "usually . . . more generous" than in the statutory fee context.  *Halderman*, 49 F.3d at 941; *see also Robin Woods Inc.*, 28 F.3d at 941 (observing "attorneys' fee awards [in the contempt setting] are 'remedial and designed to compensate claimants for losses incurred as a result of the contemnors' violations'" (quoting *Roe v. Operation Rescue*, 919 F.2d 857, 869 (3d Cir. 1990))).

As with other contempt damages, the burden is on the plaintiff to prove its entitlement to the fees requested, and "there must be 'some indication of record as to the reasonableness' of the fee before an award can be made."  *Ranco*, 776 F.2d at 1140 (quoting *Lichtenstein v. Lichtenstein*, 425 F.2d 1111, 1114 (3d Cir. 1970)).  Although a district court "retains a great deal of discretion in deciding what a reasonable fee award is," *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 721 (3d Cir. 1989), the court may not disregard uncontradicted affidavits submitted by a fee applicant with respect to matters outside the court's personal knowledge, *see Cunningham v. City of McKeesport*, 753 F.2d 262, 267-68 (3d Cir. 1985), *vacated on other grounds*, 478 U.S. 1015, *reinstated*, 707 F.2d 49 (3d Cir. 1986); *see also Black Grievance Comm. v. Phila. Elec. Co.*, 802 F.2d 648, 652-53 (3d Cir. 1986), and "may not sua sponte reduce the amount of the award when the defendant has not specifically taken issue with the amount of time spent or the billing rate," *Bell*, 884 F.2d at 720; *see also Sullivan*, 1988 WL 48557, at *2 & n.4 (noting as in a statutory fee case, a contempt fee petition "is presented in a genuinely adversarial context" in which the defendant "ha[s] both the incentive and the opportunity to challenge the fee petition").

In support of its fee petition, CardioNet has submitted declarations executed under penalty of perjury from Bradford J. Badke, the billing partner for this litigation at Ropes & Gray, LLP, CardioNet's New York-based lead counsel in this case, and from James J. Rodgers, the billing partner from Dilworth Paxson LLP, CardioNet's local counsel in Philadelphia.  The declarations are accompanied by detailed billing records from each firm setting forth, in chronological order, the individual time entries identified as relevant to the contempt motion by all firm personnel who worked on the motion and whose time was billed to CardioNet.  Each time entry includes the name of the individual timekeeper, the date, a brief description of the tasks performed, the number of hours billed, the percentage of that time allocable to the contempt motion (for time entries related to more than just the contempt motion), the timekeeper's billing rate, and the resulting fee.  CardioNet seeks to recover $934,065.63 for time spent on the contempt proceedings by attorneys, paralegals, and in-house trial preparation and graphics personnel from Ropes & Gray with hourly billing rates ranging from $895 to $1,255 for partners, $440 to $840 for associates, $280 to $325 for paralegals, and $200 to $405 for trial preparation/graphics personnel.  *See* Badke Decl. ¶¶ 11-13 & Tabs 1-2.  CardioNet also seeks to recover $18,079.25 for time spent by attorneys and paralegals from Dilworth Paxson with hourly billing rates of $555 and $520 for attorneys, and $175 and $170 for paralegals.  *See* Rodgers Decl. ¶ 11 & Tab A.  The fees requested include time spent drafting the contempt motion and other submissions in support thereof, preparing for and attending court hearings, conducting discovery in connection with the contempt proceedings, ensuring MedTel's compliance with the Court's orders, and preparing the fee petition and supporting documentation.  CardioNet additionally seeks a total of $23,031.85 in expenses, including travel-related costs incurred by

BY THE COURT:

    /s/ Juan R. Sánchez  
Juan R. Sánchez, J.

---

Ropes & Gray personnel in connection with their attendance at depositions and court hearings, as well as costs for transcription/court reporter services, duplication and printing, and courier and mailing services.

In their respective declarations, both Mr. Badke and Mr. Rodgers state their firms' billing records include only those time entries identified by firm timekeepers as relating to the contempt motion based on each timekeeper's review of his or her time records, and include only those fees charged to and not disputed by CardioNet that CardioNet has paid or intends to pay. *See* Badke Decl. ¶¶ 4-9, 16; Rodgers Decl. ¶¶ 4-9, 13. Each Ropes & Gray timekeeper for whom CardioNet seeks to recover fees has also submitted a declaration describing his or her good faith efforts to identify all time entries related to the contempt motion. Mr. Badke and Mr. Rodgers further state that, as billing partners, they regularly reviewed time entries by timekeepers at their respective firms and made adjustments to CardioNet's bills to eliminate excessive, duplicative, or unnecessary time entries. *See* Badke Decl. ¶¶ 3, 15; Rodgers Decl. ¶¶ 3, 12. As to billing rates, the Badke and Rodgers declarations, together with the supporting exhibits, show the rates reflected in Ropes & Gray and Dilworth Paxson's billing records are the normal rates each firm ordinarily charges for each timekeeper for whom fees are sought. *See* Badke Decl. ¶ 13 & Tabs 1-2; Rodgers Decl. ¶ 11 & Tab A. While Ropes & Gray's rates are higher than what this Court ordinarily sees in a typical fee-shifting case, this is a complex patent case, and CardioNet has produced evidence that the rates for Ropes & Gray attorneys are generally in line with the rates charged for like-skilled professionals at a number of comparable firms, including one (Dechert, LLP) with its main office in Philadelphia. *See* Badke Decl. ¶ 14 & Tab 3 (list of 2015 hourly rates for partners and associates at five comparable national firms). Both declarations also represent that the other costs and expenses listed therein were associated with contempt hearing and deposition-related preparation and attendance. *See* Badke Decl. ¶ 17 & Tab 4; Rodgers Decl. ¶ 14 & Tab B.

Although the Court's November 23 Order directed MedTel to submit a response to CardioNet's fee petition on or before December 21, 2015, MedTel has neither responded to the petition nor requested an extension of time in which to do so to date. Because CardioNet has produced evidence supporting the hours worked and rates claimed, and because MedTel has not challenged the accuracy of the representations and information in CardioNet's fee petition or the reasonableness of the award sought, despite having been afforded the opportunity to do so, the petition is granted. *See McDonald v. McCarthy*, 966 F.2d 112, 119 (3d Cir. 1992) ("[W]here a party fails to challenge the accuracy of representations set forth in a fee petition, the 'current submissions provide the necessary record basis for the district court's fee determination.'" (quoting *Brinker v. Guiffrida*, 798 F.2d 661, 668 (3d Cir. 1986))); *Sullivan*, 1988 WL 48557, at *2 (awarding attorneys' fees for all hours claimed after the date the defendant's contemptuous conduct began where the defendant did not challenge "the fact that certain time [was] spent[,] . . . the necessity for doing so," or "the reasonableness of the rates requested").